**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA**

**HELENA DIVISION**

| | |
|---|---|
| WILLIAM FRITSCH,<br><br>Plaintiff,<br><br>vs.<br><br>MIKE FERRITER, DR. KOHUT, DR. RANTZ, KRISTIE BOESE, and REBECCA MCNEIL,<br><br>Defendants. | Cause No. CV 12-00037-H-DLC-RKS<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO DISMISS |

**I. SYNOPSIS**

Plaintiff William Fritsch has filed an Amended Complaint alleging denial of medical care. C.D. 6. The Amended Complaint does not allege deliberate indifference, and therefore fails to state a claim. It should be dismissed.

**II. JURISDICTION**

Mr. Fritsch filed the Complaint in federal court. C.D. 2. He alleges violations of his rights under the 8th Amendment of the United States Constitution, invoking federal question jurisdiction through 28 U.S.C. § 1331. C.D. 6. The case was referred to this Court in compliance with Local Rule 72(2)(a). Personal jurisdiction exists over the parties, all of whom are found in Montana. Fed. R.

Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b).

## III. STATUS

Mr. Fritsch is a prisoner proceeding in forma pauperis, so his Complaint must be reviewed before it is served on the defendants. 28 U.S.C. § 1915 and 28 U.S.C. § 1915A.

## III. STANDARD

### A. 28 U.S.C. §§ 1915(e)(2), 1915A REVIEW

The Complaint must be dismissed if the upon review the allegations are found to be frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. Id. If the Complaint passes this review the court must order service upon the defendants.

A complaint is frivolous if it "lacks an arguable basis in either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if the plaintiff fails to allege the grounds of his entitlement to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain a sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Pleadings that are no more than conclusions, however, are not entitled to the presumption of truth and

may be disregarded. Id. at 679.

Documents filed *pro se* are "liberally construed," and a *pro se* complaint is held to less stringent standards that pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)

### B. Denial of Medical Care

To state an Eighth Amendment for denial of medical care, a plaintiff must allege specific facts that, if proved, would establish that the plaintiff had a serious medical need and the defendant showed deliberate indifference to that need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege that a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).

A serious medical need exists if failure to treat the condition could result in significant injury or the "unnecessary or wanton infliction of pain." Estelle, 429

U.S. at 104.  To qualify as a deliberately indifferent response, the plaintiff must allege a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and b) harm caused by the indifference.  Jett v. Penner, 439 F.3d 1091, 1096.

## IV.  FACTS

Mr. Fritsch is a state prisoner incarcerated at Montana State Prison in Deer Lodge, Montana.  He is proceeding without counsel.  For purposes of this analysis, the following allegations set forth in his Amended Complaint are accepted as true:

When Mr. Fritsch arrived at Montana State Prison in 2009, Nurse Kristie Boese knew he had Hepatitis C and tested his blood.  Ms. Boese told Mr. Fritsch he qualified for the Interferon Program and he was put in the Chronic Care Program where his blood was tested every three months.  C.D. 6, p. 6.

In September 2011, "it was decided" that Mr. Fritsch should begin an Interferon program to treat his hepatitis.  He received one injection per week, plus three pills twice a day.  C.D. 6, pp. 6, 9.  Mr. Fritsch does not allege who made the decision to start the treatment.  Mr. Fritsch contends that Ms. Boese failed to properly ensure his fitness before starting him on the rigorous Interferon program. C.D. 6, p. 11.

About three weeks into the program, Mr. Fritsch alleges he began feeling

weak, short-winded, dizzy, nauseous, loss of appetite, he had difficulty breathing, and his skin color changed to pale white. Every week when he received his shot, Mr. Fritsch told the nurse how he felt but the medical staff did not make changes to the treatment program. C.D. 6, p. 9. He does not specifically identify the individuals to whom he made these complaints. These symptoms went on for three and a half months during which time his blood was never tested. During that time he was under Dr. Kohut's care. C.D. 6, p. 6.

Mr. Fritsch alleges he eventually could barely hold his head up because of the pounding and nausea. He insisted on a blood draw to find out what was wrong. On December 12, 2011, a nurse attempted to draw blood from Mr. Fritsch, but all that came out of his veins was red foam because he had almost no blood left in his body and his veins were collapsing. C.D. 6, pp. 6, 9. That evening Mr. Fritsch was taken to St. Patrick Hospital in Missoula. Dr. Kohut said he would follow Mr. Fritsch to the Hospital but did not. C.D. 6, p. 6. On the way to Missoula, Mr. Fritsch slipped in and out of consciousness and says he almost died. C.D. 6, p. 6.

At St. Patrick Hospital Mr. Fritsch received a blood transfer. He alleges he was told to stop taking Interferon. C.D. 6, pp. 6-7. Mr. Fritsch contends the Interferon caused his bone marrow to stop producing blood and that he should

have been monitored while taking the drug.  C.D. 6, p. 9.

When Mr. Fritsch returned to the prison, he says he was not examined by medical staff.  His blood was not tested until three months later.  Then it was determined his body was not producing iron.  He was then given a vitamin B-12 shot once a month.  C.D. 6, p. 7.

For three weeks after he returned from Missoula the infirmary at the prison offered to give him Interferon shots; he refused.  C.D. 6, p. 7.  After his blood transfusion he began complaining about headaches and was prescribed Ibuprofen.  He states he has been told that his Hepatitis C is now "twice as bad" as when this whole thing started but he does not allege who has given him this information.  C.D. 6, p. 7.  In the eight months since Mr. Fritsch's blood transfusion, his "liver count has doubled" and he is in constant pain.  C.D. 6, p. 8.

Dr. Kohut was Mr. Fritsch's doctor throughout this time.  Mr. Fritsch has told Dr. Kohut about his ongoing symptoms, but Dr. Kohut does not believe they are caused by the Interferon treatment.  Mr. Fritsch contends there are times that Dr. Kohut didn't recognize him.  Mr. Fritsch says Dr. Kohut neglected to accompany Mr. Fritsch on the trip to Missoula.  C.D. 6, p. 11.

Mr. Fritsch alleges Dr. Rantz is in charge of the prison medical department.  She answered Mr. Fritsch's grievances by stating that the infirmary and Dr. Kohut

did everything they could for him and acted in a professional manner. He contends she is guilty of willful neglect and deliberate indifference. C.D. 6, p. 11.

Mr. Fritsch contends Rebecca McNeil denied his request for an investigation of the medical department after this incident. He contends she is part of the coverup of his treatment. C.D. 6, p. 11.

Mr. Fritsch argues that Director Ferriter had the final say in the grievance process, that he denied Mr. Fritsch's grievance appeal and that he agreed that the medical staff were doing a fine job. C.D. 6, p. 11.

## V. Analysis

Mr. Fritsch alleges a serious medical need; he has not alleged a purposeful act or failure to respond to his pain or medical need. The allegations establish that the medical department diagnosed treated Mr. Fritsch's hepatitis. Mr. Fritsch disagrees with this treatment, although he does not allege any preferable treatment.

Even alleging a difference of opinion does not of itself sufficiently allege deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); see also Hollis v. Director of Corrections, 560 F.Supp.2d 920 (C.D.Cal. 2008) ("[Plaintiff's] difference in opinion with prison medical personnel regarding the appropriate diagnoses and treatment for his Hepatitis C are not enough to state a deliberate indifference claim."). Mr. Fritsch's allegations that prison staff

7

followed a course of treatment that proved ineffective do not state a claim even for negligence, much less deliberate indifference. <u>Sanchez</u>, 891 F.2d at 242. Mr. Fritsch only alleges that he was treated and that the course of treatment was not successful. He does not allege that some other treatment would have served him better.

Mr. Fritsch's allegation that he was not properly monitored also fail to state a claim for deliberate indifference. Mr. Fritsch specifically alleges that as soon as he "insisted" on a blood draw, one was taken. When the blood draw revealed a problem, Mr. Fritsch was immediately taken to St. Patrick's Hospital in Missoula. The Interferon program was discontinued. Mr. Fritsch's allegations that medical staff did not monitor him as closely enough fall short of alleging deliberate indifference. <u>Broughton v. Cutter Labs</u>, 622 F.2d 458, 460 (9th Cir. 1980) (claims of indifference, negligence, or medical malpractice do not state a claim under § 1983).

Defendants Ferriter, Rantz, and McNeil did not personally participate in Mr. Fritsch's actual medical care. Mr. Fritsch appears to allege the Defendants' misconduct began after Mr. Fritsch's December 2011 hospital visit. Despite failing to allege that any better treatment would have served him better, Mr. Fristch alleges Director Ferriter, Dr. Rantz, and Ms. McNeil denied grievances and

8

requests for an investigation regarding the alleged denial of medical care after the December 2011 incident. Those allegations fail to state a claim upon which relief may be granted. If a constitutional violation is complete, and a supervisory grievance reviewer is simply making a determination on whether the prison should provide a remedy for a past violation, the supervisory grievance reviewer has no part in causing the constitutional violation. "There is no legitimate claim of entitlement to a [prison] grievance procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988); see Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (noting that liberty interests are generally limited to freedom from restraint). Mr. Fritsch cannot state a claim against Director Ferriter, Dr. Rantz, or Ms. McNeil for denying grievances or request for investigations regarding past violations.

The remainder of Mr. Fritsch's allegations do not advance his claim. He alleges that his "liver count has doubled." He does not explain what that means. He does not allege how it implicates the Defendants, or what impact the doubled liver count has on him. C.D. 6. Similarly, Mr. Fritsch alleges his hepatitis is twice as bad as "when this whole thing started," but does not allege what that means, the source of the information or even the cause of the worsened condition. C.D. 6.

Mr. Fritsch alleges Dr. Kohut did not accompany him to the hospital and sometimes did not seem to recognize Mr. Fritsch. C.D. 6. However, Mr. Fritsch does not allege that he was injured by these perceived shortcomings or otherwise explain their significance. These vague allegations do not state a claim on which relief can be granted. See <u>Ivey</u>, 673 F.2d at 268.

## IV. CONCLUSION

### A. Leave to Amend

Mr. Fritsch's allegations fail to state a claim upon which relief may be granted as set forth above and as set forth in the Order dated July 16, 2012. Mr. Fritsch was given an opportunity to correct these defects and he provided insufficient facts to establish a constitutional violation. Therefore, these defects could not be cured by further amendments and the case should be dismissed.

### B. "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act prohibits prisoners from bringing forma pauperis civil actions if the prisoner has brought three or more actions in federal court that were dismissed for frivolousness, maliciousness, or for failure to state a claim. 28 U.S.C. § 1915(g). This dismissal constitutes a strike because Mr. Fritsch failed to state a claim upon which relief may be granted.

### C. Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in forma pauperis without further authorization, unless:
>> (A) the district court-before or after the notice of appeal is filed-certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis and states in writing its reasons for the certification or finding;

Fed. R.App. P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." The good faith standard is an objective one. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A plaintiff satisfies the "good faith" requirement if he or she seeks review of any issue that is "not frivolous." Gardner v. Pogue, 558 F.2d 548, 551 (9th Cir. 1977) (quoting Coppedge, 369 U.S. at 445). For purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319, 325, 327 (1989); Franklin v. Murphy, 745 F.2d 1221, 1225 (9th Cir. 1984).

The finding that Mr. Fritsch's Complaints fail to state a claim upon which relief may be granted is so clear no reasonable person could suppose an appeal would have merit. Therefore, the Court should certify that any appeal of this

matter would not be taken in good faith.

**D.  Address Change**

At all times during the pendency of this action, Mr. Fritsch SHALL IMMEDIATELY ADVISE the Court and opposing counsel of any change of address and its effective date.  Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only information pertaining to the change of address and its effective date, except if Mr. Fritsch has been released from custody, the notice should so indicate.  The notice shall not include any motions for any other relief.  Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

It is **RECOMMENDED:**

1.  This matter should be dismissed with prejudice for failure to state a claim upon which relief may be granted.  The Clerk of Court should be directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  The Clerk of Court should be directed to have the docket reflect that this dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) based upon Mr. Fritsch's failure to state a claim.

3.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Mr. Fritsch's failure to state a claim is so clear no reasonable person could suppose an appeal would have merit.  The record makes plain the instant Complaint is frivolous as it lacks arguable substance in law or fact.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Mr. Fritsch may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

If Mr. Fritsch files objections, he must itemize each factual finding to which objection is made and identify the evidence in the record he relies on to contradict that finding.  In addition, he must itemize each recommendation to which objection is made and set forth the authority he relies on to contradict that recommendation.

Failure to assert a relevant fact or argument in objections to these Findings

and Recommendations may preclude Mr. Fritsch from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this <u>19th</u> day of November, 2012.

/s/ Keith Strong
Keith Strong
United States Magistrate Judge